MILTON KELLEY, Appellant,

*vs.*

D. F. CORSON and JAMES RICHARDSON, Respondents.

APPEAL FROM CIRCUIT COURT, GREEN COUNTY.

The board of supervisors of Green county, in equalizing the tax rolls for the county, took off from the list containing the farming lands of Monroe one-third the assessed value, and added the amount to the assessment of the other towns of the county; but they took nothing off from the valuation of the village lots of Monroe; and though this fact appeared upon the face of the warrant issued to the treasurer of the town, yet the warrant would justify that officer in seizing property to pay the taxes upon a village lot.

The board of supervisors of a county may in making their equalization of assessments reduce the valuation of farming lands in a town, and not reduce the valuation of village lots lying in the same town.

Where the amount of taxes [q]uired to be raised in a town was $6,654 56, and the treasurer's warrant as made out was for $6,663 17, the difference is too trifling to be regarded in deciding upon the legality of the warrant, in a collateral proceeding.

The facts in this case are so fully stated in the opinion of the court, that it becomes unnecessary to notice them, or the arguments of the counsel, further,

*Dunwiddie & Dexter,* for the respondents.

*Hiram Stevens,* for the Appellant.

*By the Court,* COLE, J. This action was commenced to recover damages for taking the appellants horse. The respondent, Richardson, put in an answer, denying all the material allegations of the complaint. The other respondent

Kelley vs. Corson and Richardson.

justified, setting forth substantially in his answer, that his co-defendant, Richardson, was town clerk of the town of Monroe, in Green county, on the 14th day of December, 1857, and as such town clerk, delivered to him, on that day, a warrant for the collection of taxes in said town, subscribed, &c., and directed to him as town treasurer of said town, whereby he was commanded to collect from each person mentioned in the assessment roll, the amount of taxes set opposite the respective names therein ; and that by virtue of said warrant he seized upon, and sold, the horse, to make the amount of taxes, which the said Kelley had been assessed, and which he had refused to pay. The cause was tried without the intervention of a jury, and the court found the defendant, Richardson, not guilty, and that Corson took the property as town treasurer, having received a warrant regular on its face, issued by the town clerk, &c.

On the trial, the defendants offered in evidence the said warrant, and assessment roll thereto attached, which were contained in two books respectively marked " book No. 1, assessment roll for the town of Monroe, 1857 ;" and " book No. 2, assessment roll for the town of Monroe village, 1857." The case does not disclose whether the admission of these assessment rolls in evidence was objected to or not, although it does appear that the counsel for the appellant insisted before the circuit court that the assessment roll and tax warrant were not regular and legal on the face, and were no protection to the officer acting under them. The particular irregularity complained of was, that the county board of supervisors, at their annual session in 1857, in equalizing the valuation of the real estate, in the assessment rolls of the towns in said county, for that year, took off one-third of the assessed valuation on the real estate in the town of Monroe, outside the limits of the village of Monroe, and put it on the assessment of the other towns in the county, thus leaving the

real estate in the village one-third higher than in the towns outside the village, and that this alleged irregularity on the part of the county board in thus equalizing the valuation appeared upon the face of the assessment roll attached to the warrant, and rendered the same invalid. We do not very well understand how the action of the county board in equalizing the assessment rolls could appear upon the face of the corrected assessment roll, which, by section 40, chapter 15, Revised Statutes, was sent by said board to the town clerk to be filed in his office. Undoubtedly the records of the county board would show what action was had in the equalization of the assessment rolls, but we were not before awaye that such action would also be apparent upon the face of the corrected rolls. The circuit court, however, decided, as appears from the record, as follows: "The irregularity appearing on the face of the tax roll, to which the tax warrant was attached is, that the county board of supervisors in equalizing took off from only the book containing the farming lands assessed, and not from the book containing Monroe village property, so that the property in the village of Monroe, where the plaintiff's property was situated, was assessed one-third more than the farm land property contained or listed in another book for said town for said year. This was done by reducing the assessed valuation in each individual parcel of property. The court decides that such an irregularity could not affect the defendants." Perhaps this decision of the court should be taken as a sufficient finding of the fact, that the action of the county board in equalizing the assessment rolls did appear upon the face of those offered in evidence, and, as the decision or finding was excepted to by the appellant, we may have to consider whether the county board, in thus equalizing the assessment rolls, acted within the sphere of their duty.

By sections 37 and 38, chapter 15, R. S., 1849, it is in sub-

Kelley vs. Corson and Richardson.

stance provided that the county board, at their annual meeting, shall examine the assessment rolls of the several towns and wards in their county, and ascertain whether the valuation of real estate in each town or ward, bears a just proportion to the valuation of all the towns and wards of the county ; and the board is authorized to increase or diminish the aggregate valuation of the real estate of any town or ward, as much per centum as may be necessary to produce a just relation between all the valuations of the real estate in the county, provided that in no instance can the aggregate valuation of all the towns and wards be reduced below the aggregate valuation as made by the assessors. Now it is insisted that under the provisions of the statute, the county board could only increase or diminish the aggregate valuation of an entire town, and not a part of a town, as done in the present case. This construction of the statute we think is forced and unreasonable. The legislature could not have intended prohibiting the board from equalizing the valuation of real estate in a large and populous village, so as to make it bear a just proportion to the valuation of the property in other towns in the county. The board is authorized to equalize the valuation of property, as between the different wards of a city ; and can any good reason be assigned why it should not have the same power over the assessment of the property of a village ? Here there was a separate assessment roll of the village. The village was undoubtedly laid out into lots, and platted, so that there could be no difficulty in determining the limits and extent of the political division, the value of whose property was increased or diminished. Practically there could be no greater inconvenience in equalizing the value of property situated thus in a village, and the property of the rest of the town, or the other towns in the county, than there would be in equalizing the value of property in different towns or wards; and there might be quite as great a

Kelley vs. Corson and Richardson.

necessity for it. So that, assuming for the purposes of this case, that the action of the county board in equalizing the assessment rolls, did appear upon the face of the assessment rolls offered in evidence, and we yet think the tax warrant cannot be considered void, and as affording no protection to the town treasurer. The circuit court held that the assessment roll constituted no part of the warrant, and therefore it was immaterial whether the county board, in equalizing the valuation of the property in the manner they did, acted bev nd the scope of authority given them by the statute or not. From the observations already made, it becomes unnecessary to inquire whether this view of the case was correct or not. For if the county board had authority to equalize the assessments, as was done in this case, the warrant and roll would be a justification to the officer taking the appellant's property.

It is true a still further objection was taken to the tax warrant and assessment roll, which was, that the taxes as carried out by the clerk, exceeded some eight dollars and a half the amount of tax required to be levied. The whole amount required to be raised was $6,654 56, while the amount in the assessment roll footed up $6,663 17. We know it is very difficult to carry out taxes in an assessment roll, so that they will be mathematically correct, and when the excess is so trifling as in the present case, it should be disregarded.

It is believed that this disposes of all the material questions in the case.

The judgment of the circuit court is affirmed.