4 P.3d 1115

In the Matter of the Order Certifying
Questions of Law.

Bryce Quinn KIRKLAND, a minor, by and
through his parents and guardians,
Quinn Kirkland and Sandy Kirkland,
husband and wife, and Quinn Kirkland
and Sandy Kirkland, husband and wife,
Plaintiffs–Respondents,

v.

BLAINE COUNTY MEDICAL CENTER
dba Wood River Medical Center, Ian
Ross Donald, M.D., Defendants–Appel-
lants.

and

Randall Coriell, Defendant.

No. 26044.

Supreme Court of Idaho,
Boise, March 2000 Term.

June 29, 2000.

Roark, Donovan, Praggastis, Rivers & Phillips, Ketchum; Tolman Law Office, Twin Falls, for appellants. Steven K. Tolman argued.

Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, PA, Boise; Luvera, Barnett, Brindley, Seattle, for respondents. Bradley G. Andrews argued.

TROUT, Chief Justice.

This appeal arises from a request for certification of issues from the Federal District Court for the District of Idaho, the Honorable Edward J. Lodge, in a diversity case tried under Idaho law. Respondents argue I.C. § 6–1603 violates the Idaho Constitution because it infringes on the plaintiffs' right to trial by jury, constitutes special legislation, and violates the separation of powers doctrine. Appellants contend I.C. § 6–1603 is constitutional and should be applied to limit the liability of the defendants in this case. We accepted certification, established a briefing schedule, and set the case for oral argument. We now answer the certified question and, for the reasons set forth below, hold I.C. § 6–1603 is constitutional under the Idaho Constitution.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a medical malpractice case tried in federal district court under Idaho law. The plaintiffs (collectively "the Kirklands"), Sandy and Quinn Kirkland, brought the action on their own behalf, and on behalf of their son, Bryce Kirkland, against Wood River Medical Center and Dr. Ian Ross Donald (collectively "WRMC") seeking recovery for injuries to Bryce arising out of the medical care provided to Sandy Kirkland at Wood River Medical Center. At trial, the jury returned a total verdict of

$29,715,077, including $11,215,077 in economic damages and $15,000,000 in noneconomic damages in favor of Bryce Kirkland. The award also included another $3,500,000 in noneconomic damages in favor of Sandy and Quinn Kirkland. The jury apportioned 25% of the responsibility for Bryce's injuries to the Wood River Medical Center, and 75% to Dr. Donald.

After trial, the Kirklands filed a motion asking the federal district judge to declare I.C. § 6–1603 unconstitutional under the Idaho Constitution. I.C. § 6–1603 provides:

(1) In no action seeking damages for personal injury, including death, shall a judgment for noneconomic damages be entered for a claimant exceeding the maximum amount of four hundred thousand dollars ($400,000); provided, however, that beginning on July 1, 1988, and each July 1 thereafter, the cap on noneconomic damages established in this section shall increase or decrease in accordance with the percentage amount of increase or decrease by which the Idaho industrial commission adjusts the average annual wage as computed pursuant to section 72–409(2), Idaho Code.

(2) The limitation contained in this section applies to the sum of: (a) noneconomic damages sustained by a claimant who incurred personal injury or who is asserting a wrongful death; (b) noneconomic damages sustained by a claimant, regardless of the number of persons responsible for the damages or the number of actions filed.

(3) If a case is tried to a jury, the jury shall not be informed of the limitation contained in subsection (1) of this section.

(4) The limitation of awards of noneconomic damages shall not apply to: (a) Causes of action arising out of willful or reckless misconduct. (b) Causes of action arising out of an act or acts which the trier of fact finds beyond a reasonable doubt would constitute a felony under state or federal law.

I.C. § 6–1603 (1998). If applied to this case, I.C. § 6–1603 would limit Bryce Kirkland's recovery of noneconomic damages against WRMC to approximately $573,000, instead of the $3,750,000 award by the jury. Because the jury specifically found Dr. Donald to have acted recklessly, the cap on noneconom-

ic damages found in I.C. § 6–1603 would not apply to limit his liability to the Kirklands. In the federal district court, the Kirklands argued I.C. § 6–1603 is unconstitutional as (1) a violation of the right to jury trial; (2) special legislation; (3) a violation of the separation of powers doctrine; and (4) as a violation of due process. After briefing and argument, the federal district judge agreed to certify the first three questions of Idaho constitutional law to this Court regarding the validity of I.C. § 6–1603. We accepted certification and now answer.

### III.

### STANDARD OF REVIEW

Federal courts may certify in writing to this Court a question of law asking for a declaratory judgment or decree adjudicating the Idaho law on such a question if the certified question is a controlling question of law and there is no controlling precedent in the decisions of this Court. I.A.R. 12.1. This case requires this Court to decide the constitutionality of I.C. § 6–1603. The constitutionality of a statute is a question of law over which this Court exercises free review. *Meisner v. Potlatch Co.*, 131 Idaho 258, 260, 954 P.2d 676, 678 (1998); *Harris v. State, Dept. of Health and Welfare*, 123 Idaho 295, 297, 847 P.2d 1156, 1158 (1992).

### IV.

### DISCUSSION

**A. Idaho Code § 6–1603 does not violate the right to jury trial.**

The Kirklands argue I.C. § 6–1603 violates the right to jury trial as guaranteed by Article I, § 7 of the Idaho Constitution because it denies plaintiffs the right to have a jury determine the amount of noneconomic damages incurred by tort victims. Article I, § 7 of the Idaho Constitution provides:

The right of trial by jury shall remain inviolate; but in civil actions, three-fourths of the jury may render a verdict, and the legislature may provide that in all cases of misdemeanors five-sixths of the jury may render a verdict. A trial by jury may be waived in all criminal cases, by the consent

of all parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law. In civil actions the jury may consist of twelve or any number less than twelve upon which the parties may agree in open court. Provided, that in cases of misdemeanor and in civil actions within the jurisdiction of any court inferior to the district court, whether such case or action be tried in such inferior court or in district court, the jury shall consist of not more than six.

IDAHO CONST. art. I, § 7. In *State v. Bennion*, 112 Idaho 32, 730 P.2d 952 (1986), we noted this Court "long and often has stated that Article 1, § 7 preserves the right to jury trial as it existed at the common law and under the territorial statutes when the Idaho Constitution was adopted." *Bennion*, 112 Idaho at 37, 730 P.2d at 957. This standard "embodies the common sense notion that, by employing the phrase 'shall remain inviolate,' the Framers must have intended to perpetuate the right as it existed in 1890." *Id.* In *Idaho Dept. of Law Enforcement v. Free*, 126 Idaho 422, 885 P.2d 381 (1994), this Court reiterated the principles embodied in *Bennion*. *Free* involved a civil forfeiture case brought under I.C. § 37-2744A. The appellants argued I.C. § 37-2744A was unconstitutional because it denied a jury trial in civil forfeiture proceedings. In holding I.C. § 37-2744A unconstitutional, this Court first determined whether the right to jury trial in civil forfeiture actions existed at the time the Idaho Constitution was adopted. After determining civil forfeitures existed, and were afforded a right to jury trial at common law when the Idaho Constitution was adopted, this Court held I.C. § 37-2744A unconstitutional because it denied that right. *Free*, 126 Idaho at 425-27, 885 P.2d at 384-86.

 In the case at hand, the Kirklands urge this Court to hold I.C. § 6-1603 unconstitutional because it denies them the right to jury trial as it existed in 1890. The Kirklands correctly note that, at the time of the adoption of the Idaho Constitution, the Supreme Court of the Territory of Idaho had already recognized a jury's right to award general compensatory damages. In *Cox v. North-Western Stage Co.*, 1 Idaho 376 (Id. Terr.1871), the Supreme Court of the Territory of Idaho affirmed a jury's award of $15,000 in general damages and $280 in special damages to a plaintiff injured while a passenger on a stage coach. In response to the defendant's argument the verdict was not supported by the evidence, the Court noted that in order to find for the plaintiff, the jury must have determined the plaintiff was severely injured due to the negligence of the stage driver, and the plaintiff was damaged in the amount of $15,280. The Court went on to say "[t]he question is not whether this court would have found as the jury did, but whether or not there was such an abuse of discretion on the part of the jury as to demand an interference by this court. No one will contend but what the jury had a right to pass upon all of these questions." *Id.* at 383. Additionally, the Court rejected the defendant's argument the damage award was disproportionate to the injuries suffered, noting it was the special province of the jury to determine the extent of the plaintiff's damage. In so holding, the Court noted "[a] jury of twelve good and lawful men have said by their verdict, that this plaintiff has been damaged in the sum of fifteen thousand two hundred and eighty dollars, and we do not think that, under the law and facts, we would be justified in saying that they were not correct, as well as honest, in their judgment." *Id.* at 386. Therefore, it is clear as early as 1871 the Territory of Idaho recognized the right of the jury to assess and award general or noneconomic damages to plaintiffs in personal injury cases. This right was not expressly altered by the adoption of the Idaho Constitution.

 Because the right to have a jury assess and award noneconomic damages to plaintiffs in personal injury actions existed at the time of the adoption of the Idaho Constitution, and was not expressly altered by the Constitution, we next turn to the question of whether I.C. § 6-1603 violates that right. WRMC argues I.C. § 6-1603 does not violate the right to a jury trial because, as this Court has previously held, "the legislature clearly has the power to abolish or modify common law rights and remedies." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 717, 791 P.2d 1285, 1296 (1990). According to WRMC, because the cap on noneconomic

damages imposed by I.C. § 6–1603 is simply a modification of a common law remedy, the statute is within the constitutional powers of the Idaho legislature. In support of this argument, WRMC relies heavily on *Jones v. State Bd. of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976). In *Jones,* the Court held a statute limiting the damages recoverable against physicians and hospitals in medical malpractice actions constitutional. While the statute upheld in *Jones* was substantially similar to the one at hand, the case was not decided under Article I, § 7 regarding the right to trial by jury. In fact, the right to jury trial was apparently never argued to this Court or the district court below. Instead, the constitutionality of the statute at issue in *Jones* was decided under the "open courts" provision of Article I, § 18 of the Idaho Constitution. Therefore, the holding in *Jones* does not directly support WRMC's argument that I.C. § 6–1603 does not violate the right to jury trial.

■ WRMC argues, even if *Jones* does not directly support their argument, it nevertheless stands for the proposition that the legislature has the power to abolish or modify common law rights. If the legislature can abolish common law rights, it therefore has the power to limit the remedies available for a cause of action. In support of this argument, WRMC cites to *Franklin v. Mazda Motor Corp.,* 704 F.Supp. 1325 (D.Md.1989) and *Boyd v. Bulala,* 877 F.2d 1191 (4th Cir. 1989). In each of these cases, the courts reasoned that if the legislature could abolish a cause of action, it necessarily had the power to limit the damages recoverable for the cause of action. For example, in *Franklin* the court noted "[i]f the legislature can act within its proper sphere of authority and completely eliminate a cause of action for negligence or repeal whole categories of recoverable damages under recognized torts, then it must follow that the legislature has the power to define causes of actions and limit categories of recoverable damages for reasonable policy considerations...." *Franklin,* 704 F.Supp. at 1333. We believe a similar rationale applies to this case. It is clear that, under the Idaho Constitution, the legislature has the power to modify or repeal common law causes of action. *See* IDAHO CONST. art. XXI, § 2; I.C. § 73–116 (1999).

Consistent with this power, the legislature has limited, and/or eliminated, the liability of defendants in certain personal injury cases involving governmental entities, employment, ski and recreation activities, etc. *See, e.g.,* I.C. § 6–904 (limitation on liability of governmental entities); I.C. § 6–1101–1109 (limitation on liability of ski area operators); I.C. § 72–209 (providing the worker's compensation law provides the exclusive remedy against an employer). Similarly, the legislature has enacted statutes of limitation and repose which can effectively prevent plaintiffs from recovering damages in personal injury cases. We can discern no logical reason why a statutory limitation on a plaintiff's remedy is any different than other permissible limitations on the ability of plaintiffs to recover in tort actions.

Additionally, as WRMC notes, at the time the Idaho Constitution was adopted, there were territorial laws providing for double and treble damages in certain civil actions. *See, e.g.,* REV. STATUTES OF IDAHO TERRITORY, 1887, Title VIII, Ch. III, § 1336 (owner of quartz mill who does not enclose the mill liable for double the damage suffered by owner of livestock that may enter and drink the water or acids); REV. STATUTES OF IDAHO TERRITORY, 1887, Title X, Ch. II, § 4531 (allowing treble damages against anyone who unlawfully removed timber from another's land); REV. STATUTES OF IDAHO TERRITORY, 1887, Title X, Ch. II, § 4533 (allowing damages three times the amount of actual damages suffered from an unlawful or forcible entry). Therefore, the Framers could not have intended to prohibit in the Constitution all laws modifying jury awards. While the statutes cited by WRMC all increased the penalty against a defendant, rather than reducing the damages as I.C. § 6–1603 does, they nevertheless did "modify" the jury's award. That is, the defendant's right at common law to have the extent of his liability determined by a jury was legislatively altered by the imposition of statutory penalties. While these statutes may not have affected the ability of the plaintiff to recover fully, they nevertheless demonstrate that at the time the Constitution was adopted, the legislature had exercised its power to modify the common law of damages and increase the

liability traditionally imposed on certain defendants.

■ Finally, I.C. § 6–1603 does not violate the right to a jury trial because the statute does not infringe upon the jury's right to decide cases. The jury is still allowed to act as the fact finder in personal injury cases. The statute simply limits the legal consequences of the jury's finding. In *Etheridge v. Medical Ctr. Hosps.*, 237 Va. 87, 376 S.E.2d 525 (1989), the Virginia Supreme Court held a statute limiting damages awarded in medical malpractice actions constitutional. In so holding, the Virginia Court held "although a party has the right to have a jury assess his damages, he has no right to have a jury dictate through an award the legal consequences of its assessment." *Id.* at 529. Similarly, in *Franklin v. Mazda Motor Corp.*, 704 F.Supp. 1325 (D.Md.1989), the federal district court held "a legislature adopting a prospective rule of law that limits all claims for pain and suffering in all cases is not acting as a fact finder in a legal controversy.... The right of jury trials in cases at law is not impacted." *Id.* at 1331. We agree with the decisions of these courts. Nothing in the statute prohibits a plaintiff from presenting his or her full case to the jury and having the jury determine the facts of the case based on the evidence presented at trial. The jury is not instructed about the cap, and is free to make all factual determinations relevant to the case. Once those factual determinations have been made, it is then up to the judge to apply the law to the facts as found by the jury. While some courts have held this procedure simply "plays lip service to the form of the jury but robs the institution of its function," *Lakin v. Senco Products, Inc.*, 329 Or. 62, 987 P.2d 463, 473 (1999) (quoting *Sofie v. Fibreboard Corp.*, 112 Wash.2d 636, 771 P.2d 711, 721 (1989)), we disagree. In this case, the Kirklands had a jury trial during which they were entitled to present all of their claims and evidence to the jury and have the jury render a verdict based on that evidence. That is all to which the right to jury entitles them. The legal consequences and effect of a jury's verdict are a matter for the legislature (by passing laws) and the courts (by applying those laws to the facts as found by the jury). Therefore, we hold I.C. § 6–1603 does not violate the right to jury trial as guaranteed by Article I, § 7 of the Idaho Constitution.

**B. Idaho Code § 6–1603 does not constitute special legislation.**

■ The Kirklands argue even if I.C. § 6–1603 does not violate the right to jury trial, the statute is nevertheless unconstitutional because it constitutes special legislation in violation of Article III, § 19 of the Idaho Constitution. Article III, § 19 of the Idaho Constitution states, in pertinent part:

> The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say ...
>
> Releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any person or corporation in this state, or any municipal corporation therein.

IDAHO CONST. art. III, § 19. We have previously held "a legislative enactment is not special legislation when it treats all persons in similar situations alike." *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 26, 644 P.2d 341, 348 (1982); *see also Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976). The standard for determining "whether a classification is local or special is whether the classification is arbitrary, capricious or unreasonable." *Sun Valley Co. v. City of Sun Valley*, 109 Idaho 424, 429, 708 P.2d 147, 152 (1985) (citing *Washington County v. Paradis*, 38 Idaho 364, 369, 222 P. 775 (1923)).

■ The Kirklands argue the classification created by I.C. § 6–1603 is arbitrary, capricious, or unreasonable because it arbitrarily discriminates between slightly and severely injured plaintiffs, and between tortfeasors who cause severe and moderate or minor injuries. The $400,000 cap on noneconomic damages (adjusted for inflation) necessarily applies only to those cases where the plaintiff is severely injured, thereby allowing full recovery for those plaintiffs who suffer moderate injuries, but denying a full recovery to those who have suffered more severe injuries. Similarly, the Kirklands argue the statute arbitrarily decides those tortfeasors who have inflicted the most damage are entitled to have their liability for noneconomic damages capped, while those who have in-

flicted minor or moderate injuries are liable for the full amount.

WRMC argues any classification created by I.C. § 6–1603 is reasonable and not arbitrary or capricious because the statute is a reasonable attempt by the legislature to address and solve important societal and economic concerns that large noneconomic damage awards could drive up the cost of liability insurance to Idaho citizens. That, in turn, would create a situation where defendants would be unable to respond to judgments for either economic or noneconomic damages, thus leaving Idaho citizens injured by negligent acts of others with little or no recourse for their injuries.

 The legislative history behind I.C. § 6–1603 reveals the statute was passed as part of a larger legislative package aimed at addressing concerns that large civil jury verdicts were driving up the cost of liability insurance. As part of the bill which included I.C. § 6–1603, the legislature also included reforms to the liability insurance business so Idaho policyholders would have more control over the prices and conditions of liability insurance; legislation designed to encourage settlements by giving defendants additional incentive to settle and by giving the courts greater latitude to impose sanctions on those bringing frivolous lawsuits; and some limitations on the application of joint and several liability. *See* Act of April 1, 1987, ch. 278, 1987 Idaho Session Laws 571. By striking this balance between a tort victim's right to recover noneconomic damages and society's interest in preserving the availability of affordable liability insurance, the legislature "is engaging in its fundamental and legitimate role of 'structur[ing] and accomodat[ing] the burdens and benefits of economic life.' " *Patton v. TIC United Corp.*, 77 F.3d 1235, 1247 (10th Cir.1996) (citations omitted). Additionally, it should be noted I.C. § 6–1603 expressly exempts tortfeasors who are found to have acted recklessly or feloniously from the limitation of liability. Therefore, contrary to the Kirklands' assertions, the statute does not arbitrarily limit the liability of all defendants causing severe injuries. Because we find the state had a legitimate interest in protecting the availability of liability insurance for Idaho citizens, and I.C. § 6–1603 is neither an arbitrary, capricious, nor unrea-

sonable method for addressing this legitimate societal concern, we find I.C. § 6–1603 does not violate the constitutional prohibition against special legislation.

### C. Idaho Code § 6–1603 does not violate the separation of powers doctrine.

Finally, the Kirklands argue even if I.C. § 6–1603 does not violate the right to jury trial and does not constitute special legislation, it is nevertheless unconstitutional because the statute violates the separation of powers doctrine. The separation of powers doctrine is embodied in two provisions of the Idaho Constitution. Article II, § 1 provides:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

IDAHO CONST. art. II, § 1. Article V, § 13 of the Idaho Constitution provides:

> The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with the Constitution, provided, however, that the legislature can provide mandatory minimum sentences for any crimes, and any sentence imposed shall not be less than the mandatory minimum sentence so provided. Any mandatory minimum sentence so imposed shall not be reduced.

IDAHO CONST. art. V, § 13. The Kirklands argue I.C. § 6–1603 violates the separation of powers doctrine because it deprives the judiciary of its discretionary power to grant remittitur and a new trial in personal injury cases. According to the Kirklands, because the statute reduces damages by operation of

law, without regard to the specific circumstances of each particular jury award, the statute infringes on the inherent right of the courts to reduce jury verdicts in those instances where the evidence demonstrates the jury's verdict is excessive as a matter of law. *See, e.g., Best v. Taylor Machine Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997); *Sofie v. Fibreboard Corp.,* 112 Wash.2d 636, 771 P.2d 711, 720–21 (1989) (stating in dicta a cap on noneconomic damages may violate the separation of powers because it is a legislative attempt to mandate a legal conclusion).

Despite the Kirklands arguments, we believe I.C. § 6–1603 does not impermissibly infringe on the judiciary's traditional power of remittitur. Nothing in I.C. § 6–1603 purports to limit the exercise of the judiciary's constitutional powers or jurisdiction. Rather, if anything, the statute is a limitation on the rights of plaintiffs, not the judiciary. Because it is properly within the power of the legislature to establish statutes of limitations, statutes of repose, create new causes of action, and otherwise modify the common law without violating separation of powers principles, it necessarily follows that the legislature also has the power to limit remedies available to plaintiffs without violating the separation of powers doctrine. As the federal district court noted in *Franklin v. Mazda Motor Corp.*:

> There can be little doubt that were a legislative body to review a dispute between two parties and resolve the compensation to be awarded, the activity would be a judicial one reserved to courts and juries. On the other hand, when a legislative body, *without regard to facts of a particular case, dispute or incident,* but rather as a matter of policy and rule determines for all citizens in all incidents that may occur thereafter that recovery will be limited, the function is legislative, completely analogous to the adoption or repeal of causes of action and remedies therefor. Juries function as parts of the dispute resolution apparatus between parties; a legislature functions to make rules in advance of disputes to be applied to disputes.

704 F.Supp. at 1331. The Idaho Constitution expressly grants the legislature the power to modify or abolish common law causes of action. By placing a cap on noneconomic damages in personal injury cases, the legislature has done nothing more than effect a valid change in the common law of personal injury in Idaho. Thus, we hold I.C. § 6–1603 does not violate the separation of powers doctrine embodied in the Idaho Constitution.

## V.

## CONCLUSION

In response to the certified questions from the federal district court, we find I.C. § 6–1603 does not violate the right to jury trial as guaranteed by Article I, § 7 of the Idaho Constitution; does not constitute special legislation in violation of Article III, § 19 of the Idaho Constitution; and does not violate the separation of powers doctrine embodied in the Idaho Constitution.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL concur.